UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

APOLLO JOHNSON,

                    Plaintiff,                          Case No. 1:21-cv-92

v.                                                      Honorable Robert J. Jonker

M. SCHAFER et al.,

                    Defendants.
_____/

## OPINION

          This is a civil rights action originally brought in the Eastern District of Michigan

by a state prisoner under 42 U.S.C. § 1983.  The matter subsequently was transferred to this Court.

Before transferring the case to this Court, the Eastern District of Michigan reviewed the complaint

under screening provisions of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110

Stat. 1321 (1996), 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  Under these provisions,

a federal court is required to dismiss any prisoner action brought under federal law if the complaint

is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  *Id.*  A federal court must read Plaintiff's *pro se*

complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*,

504 U.S. 25, 33 (1992).

          In an order issued on September 8, 2020 (ECF No. 10), the Eastern District of

Michigan dismissed Plaintiff's claims against five Defendants for failure to state a claim.  The

court also dismissed for failure to state a claim Plaintiff's claims under the Prison Rape Elimination

Act ("PREA"), 42 U.S.C. § 15601 et. seq., because the PREA does not create a private right of action.  After the case was partially dismissed but not yet served, the Eastern District of Michigan stayed the action and referred the case to the Pro Se Prisoner Early Mediation Program (ECF No. 13).  When the mediation process terminated, the Eastern District transferred the case to this Court (ECF No. 17).

The matter is now before this Court on initial review.  Rule 21 of the Federal Rules of Civil Procedure provides that, on motion by a party or on its own motion, the Court may at any time drop or add parties or sever a claim on grounds of misjoinder.  *Id.*  Applying that standard, the Court will sever Plaintiff's claims against Defendants Silliman, Smith, and Beck into a new action and Plaintiff's claims against Defendants Mikel, Steffke, and Unknown Part(y)(ies) ##1–3 into another new action.

In addition, the Court also has reviewed the complaint under the PLRA screening provisions, 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c).  Applying the applicable standards, the Court will dismiss for failure to state a claim Plaintiff's Eighth and Fourteenth Amendment claims against remaining Defendants Schafer and Cook.  The Court will order service of Plaintiff's retaliation claims against Defendants Schafer and Cook

## Discussion

## I.    Factual Allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan.  The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  Plaintiff originally sued the following DRF officials:  Correctional Officers M. Shafer and D. Cook; Resident Unit Managers (RUMs) James Dunigan and William Anderson; Sergeant Unknown Wireman; Deputy Wardens David Fenby and

M. Floyd; Lieutenant Unknown Silliman; Transportation Officers Unknown Smith and Unknown Beck; Registered Nurses Nathan Mikel and Unknown Steffke; John or Jane Doe Doctor (Unknown Part(y)(ies) #1); John or Jane Doe Physician Assistant (Unknown Part(y)(ies) #2); and unspecified health service staff (Unknown Part(y)(ies) #3).

The Eastern District of Michigan dismissed Defendants Dunigan, Wireman, Fenby, Floyd, and Anderson, because Plaintiff's allegations against them were insufficient to state a claim. The court also dismissed Plaintiff's claims under the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 et seq., against the remaining Defendants. The court then transferred the remainder of the case to this Court.

In this opinion, the Court reviews Plaintiff's claims against remaining Defendants Schafer, Cook, Silliman, Smith, Beck, Mikel, Steffke, and Unknown Part(y)(ies) ##1–3. Plaintiff's allegations against the remaining Defendants fall into multiple categories, which the Court will discuss separately.

### A. Defendants Schafer & Cook

Plaintiff's complaint first names Defendants Schafer and Cook, and his first set of allegations concerns them.  He contends that Schafer and Cook sexually harassed him, verbally harassed him, and retaliated against him when he filed grievances about the harassment by threatening to increase his security level and issuing or threatening to issue misconduct tickets.

More specifically, on February 26, 2018, Defendant Schafer allegedly made a sexually suggestive remark to Plaintiff about sucking Schafer's penis.  Plaintiff filed a grievance with the MDOC Internal Affairs Department because, anticipating retaliation, he did not feel safe submitting the grievance to PREA officials at DRF.  He also mailed his PREA grievance to the "PREA Auditor" in Indianapolis.  (Compl., ECF No. 1, PageID.5–6.)

Plaintiff complains that, on the morning of March 5, 2018, he was subjected to retaliation by Defendants Schafer and Cook, who began calling Plaintiff a "cock sucker," asking in loud voices whether Plaintiff "had ever had a white cock in his mouth," and telling Plaintiff that he would be sent to Level-4 housing.  (*Id.*, PageID.6.)  Shortly thereafter, when Plaintiff was called to the medication line, Schafer and Cook repeated similar comments and threatened to increase his custody level from Level II to Level IV.  Defendants continued their verbal abuse when Plaintiff returned from the medication line to await his breakfast call.

When Plaintiff was called to breakfast, he located a supervisor, Sergeant Martinez (not a defendant), to complain about the sexual abuse and threats made by Defendants Schafer and Cook and to advise that the abuse was retaliatory for Plaintiff's filing of a PREA grievance.  In response, Martinez asked about the grievance and took down Plaintiff's name, prisoner number, and prisoner cell number, advising Plaintiff that he would look into it.

As Plaintiff returned to the housing unit from the chowhall, Defendants Schafer and Cook continued to state in loud tones that Plaintiff was going to Level IV.  At approximately 10:15 to 10:30 a.m., during count, Plaintiff observed through his cell window that Sergeant Martinez and another official escorted Defendant Schafer to the control center.  Plaintiff overheard Martinez tell Schafer about the PREA grievance that Plaintiff had filed.  Shortly thereafter, while in the medication line, Plaintiff heard RUM Dunigan (a previously dismissed Defendant) tell Defendant Shafer about the PREA grievance.  As Plaintiff returned from the medication line, Defendant Shafer told Defendant Cook about the PREA complaint.  Cook responded, "Don't worry I'll handle that cock (penis) sucker for you, let[']s see how he likes level-4 & all those sanctions[!"]  (*Id.*, PageID.7.)  Due to the remarks, Plaintiff lost his appetite.

On March 5, 2018, as Plaintiff was returning to his cell from the day room, Defendant Cook began yelling at Plaintiff in a belligerent tone, asking whether Plaintiff intended to go to chow.  Plaintiff told Defendant Cook to leave him alone.

Plaintiff felt threatened and anxious, so he went to the control center and asked for a supervisor.  He then noticed that Defendant Cook was in the captain's office.  Plaintiff told Sergeant Hammer (not a defendant) that Defendants Schafer and Cook had retaliated against him and harassed him.  Shortly thereafter, Plaintiff was escorted to the segregation unit.  While Plaintiff was in segregation, correctional officer Rirgy (not a defendant) reviewed Plaintiff on a Class-III misconduct charge for being out of place, which was written by Defendant Cook.  Rirgy imposed a sanction of five days' loss of privileges.

The same day, March 5, 2018, Sergeant Hammer (not a defendant) wrote a Class-II misconduct ticket against Plaintiff for disobeying a direct order, based on Plaintiff's refusal to return to his housing unit when ordered.  Plaintiff alleges that he refused because Defendants Schafer and Cook were relentlessly harassing him, sexually and retaliatorily.  Sergeant Fidler reviewed Plaintiff on the misconduct on March 7, 2018.  Plaintiff did not plead guilty.

On March 5, Defendant Cook wrote a Class-II misconduct for insolence/creating a disturbance that Plaintiff alleges was fabricated and designed to support transferring Plaintiff from Level-II custody to Level IV.  Sergeant Fidler (not a defendant) reviewed the insolence misconduct on March 6, and Plaintiff requested a hearing.  The ticket was dismissed on March 15, 2018.

Correctional Officer Eerdman (not a defendant) issued Plaintiff a direct order to go to Level IV on March 6, 2018.  Plaintiff objected, claiming that he was a Level-II prisoner and should not have to go to Level-IV housing.

Plaintiff wrote a Step-I grievance to the Internal Affairs Division, concerning the alleged sexual harassment, general harassment, and retaliatory actions by Defendants Schafer and Cook, and he placed it in the outgoing mail on March 8, 2018, together with a disbursement authorization.  RUM Niemiec (not a defendant) returned the grievance to him.  On March 9, 2018, Plaintiff submitted a second internal-affairs grievance against Defendants Schafer and Cook and a disbursement authorization to RUM Niemiec, with instructions to place it in the outgoing mail.

On March 21, 2018, Plaintiff sent a lengthy "epistle" (*Id.*, PageID.10) to the PREA auditor, Bryan Pearson (not a defendant).   Plaintiff complained about the conduct of all staff.  He was unable to make a copy of the letter because he was in segregation.  On March 26, Plaintiff received a "Notification of Sexual Abuse & Sexual Harassment Investigative Finding & Action," which reported that insufficient evidence was found to support Plaintiff's PREA grievance.  *Id.* Plaintiff complains that he was never interviewed and that MDOC staff always protect and cover-up allegations against other staff members.

Plaintiff alleges that the conduct of Defendants Schafer and Cook violates the First, Eighth, and Fourteenth Amendments.

### B.  Defendants Silliman, Smith & Beck

In his second set of allegations, Plaintiff complains that Defendants Silliman, Smith, and Beck physically forced him onto a non-wheelchair-equipped bus, despite his need for a wheelchair.  They also failed to restrain him, causing him to be thrown from his seat at the first turn.

More specifically, Plaintiff alleges that he has had chronic back problems since sustaining two gunshot wounds in 1997.  Over the years of his incarceration, Plaintiff's problems have worsened, and he experiences significant problems walking, standing, and performing other physical activities.  He suffers constant pain ranging from discomfort in his extremities to constant

and extreme pain in his back.  Plaintiff is unable to walk more than a few steps, so he must use a wheelchair 97% of the time.   Although Plaintiff is not paralyzed, he endures significant problems—pain, spasms, and his back giving out—whenever he attempts to stand or walk.

Plaintiff was transferred from the Macomb Correctional Facility (MRF) to DRF on January 19, 2018.  When he arrived at approximately 8:00 p.m., an unknown nurse reviewed his medical conditions and gave Plaintiff copies of his special accommodations.  Plaintiff looked over the accommodations and realized that his wheelchair accommodation had been changed from "permanent" to "distance between transfer."  (Compl., ECF No. 1, PageID.5.)  The nurse told Plaintiff to submit a medical kite about his chronic back pain.[1]

Two months after Plaintiff arrived at DRF, on March 28, 2018, Plaintiff was instructed to pack his belongings immediately, as he was being transferred.  Plaintiff packed all of his belongings, which were taken to the control center for transfer.

The following morning, Plaintiff was strip-searched, escorted to the control center for transfer, placed in leg irons and belly chains, and taken to the transportation bus, which was not a handicap van and had no wheelchair lift.  Plaintiff informed Defendant Transportation Guards Smith and Beck that he was unable to get on the bus.  Smith and Beck allegedly became threatening, insisting that Plaintiff would get on the bus.  The unknown bus driver, however, instructed Defendants Smith and Beck to take Plaintiff back inside the facility, since he could not get on the bus by himself.

Once Plaintiff was back inside the facility, Defendant Lt. Silliman informed Defendant Smith that Plaintiff must board the bus.  Defendant Smith took Plaintiff back to the bus

---

[1] Plaintiff complains that the changes to his accommodations must have been made by DRF Deputy Warden Darrell Steward and DRF Physician's Assistant Kim Farris before Plaintiff was transferred.  Neither Steward nor Farris is named as a defendant in this action, and Plaintiff does not seek relief from injuries caused by the changes.

and dragged him onto the bus by pulling on his restrained arms.  Smith hauled Plaintiff onto the bus seat but did not put him in a seat belt.  As soon as the bus drove away, it made a sharp turn, throwing Plaintiff off his seat and onto the floor, where he landed on his left shoulder and back. Plaintiff suffered injuries to his left shoulder, lower back, and neck.  The unknown bus driver immediately stopped the bus, saying, "I told y[']all it was a bad idea to force him on the bus[.]" (*Id.*, PageID.12.)  Plaintiff was screaming in pain.  Defendant Nurse Mikel arrived and yelled at Plaintiff to get up, but Plaintiff informed Mikel that he was unable to do so because of his physical limitations, injuries, and restraints.  Shortly thereafter, Captain Kapustka (not a defendant) arrived and informed Plaintiff that there was a wheelchair-accessible van waiting to transfer Plaintiff. Kapustka attempted to help Plaintiff off the floor, but Plaintiff explained that he could not move, because he was wedged between the seats with restraints on.  After much maneuvering, custody and medical staff eventually managed to lift Plaintiff off the floor of the van.  Kapustka and an unknown sergeant and unknown guard carried Plaintiff off the bus, placed him in a wheelchair, and took him back into the facility.

After being strip-searched again, Plaintiff was placed on the wheelchair-accessible van and transferred to the G. Robert Cotton Correctional Facility (JCF), in Jackson, Michigan. Shortly after Plaintiff arrived at JCF, he was examined in health service.  The transportation guard was then ordered to return Plaintiff to DRF, because he could not stay at JCF.  Plaintiff was transported in a wheelchair-accessible van to DRF, where Plaintiff was again placed in segregation to await transfer to another facility.

Plaintiff complains that Defendants Silliman, Smith, and Beck acted in concert to place him at risk of harm by forcing him onto the non-wheelchair-accessible bus and not seat-

belting him.   He contends that Defendants' actions violated the Eighth and Fourteenth Amendments and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.

### C. Defendants Steffke & Unknown Part(y)(ies) ##1–3

In his third set of allegations, Plaintiff complains that Defendants Steffke and Unknown Part(y)(ies) ##1–3 refused to provide medical care for the injuries he suffered during the transportation incident.

On March 30, 2018, Plaintiff submitted a health care request, seeking attention for the injuries to his left shoulder, lower back, and neck incurred in the bus incident.  When he did not receive a rapid response, he submitted another medical kite on April 4, 2018, again complaining about the injuries he suffered in the accident.  On April 5, he was escorted to health services.  Defendant Nurse Steffke asked Plaintiff to get onto the examination table, but Plaintiff told her that he was unable to do so because of his injuries and restraints.  Defendant Steffke accused Plaintiff of faking his injuries, berated him, and refused to treat him.  Plaintiff sent another kite on April 7, again requesting medical care for his injuries.  He received a response from Nurse Deanne Verschure (not a defendant), who stated that Plaintiff had refused his earlier assessment.  Plaintiff contends that Defendant Steffke falsely stated that Plaintiff had refused treatment on April 5, 2018.

Plaintiff alleges that Defendants Steffke, Doctor Unknown Part(y)(ies) #1, PA Unknown Part(y)(ies) #2, and Health Service Staff Unknown Part(y)(ies) #3 are responsible for failing to treat his injuries.  Plaintiff contends that Defendants' actions and inactions violated the Eighth and Fourteenth Amendments and the ADA.

### D.  Defendant Mikel & Unknown Part(y)(ies) ##1–3

In his fourth set of allegations, Plaintiff complains that officials failed to address a defective wheel on his wheelchair, resulting in his being thrown from his chair during transport from the showers.

On April 9, 2018, Plaintiff informed Correctional Officer Copeland, Sgt. Hammer, and an unknown nurse (not defendants) that the left front wheel of his state-provided wheelchair had disconnected.  All three responded that they had no control over health services and refused to speak with medical staff.  On April 10, Plaintiff showed Nurse Jerome (not a defendant) the problem with his wheelchair.  Jerome responded that Plaintiff needed a new wheelchair, but he apparently took no action.  Later that day, both Sgt. Hammer and Captain Brown (not defendants) again told Plaintiff that they had no control over health care.  Plaintiff submitted another kite to health care on April 10, again seeking treatment for his injuries.

On April 11, 2018, Correctional Officer Errdman (not a defendant) placed Plaintiff in restraints and escorted him to the shower, using the wheelchair.  At the entrance to the shower, the left wheel disconnected from the wheelchair.  Plaintiff noticed and warned Errdman, and another prisoner assisted Errdman to tip the chair back, in order to push Plaintiff into the shower. Once in the shower, Plaintiff reconnected the wheel.  After his shower, Plaintiff was restrained again and placed back in the wheelchair.  As Officer Depky (not a defendant) pushed the chair over the shower entrance threshold, the wheel disconnected, and Plaintiff was thrown from the chair, again landing on his left shoulder.  Plaintiff injured his shoulder, lower back, and wrist. Officer Errdman asked Officer Depky what had happened, and, when told, Errdman began laughing.  Neither officer took Plaintiff to health care nor helped him get off the floor, where he remained for one and one-half hours.

Eventually, Defendant Nurse Mikel arrived to find Plaintiff on the floor and in extreme pain.  Defendant Mikel stated that he would not waste his time taking Plaintiff to health care, because Plaintiff was faking his injuries.  Sgt. Burns (not a defendant) and Defendant Officer Depky dragged Plaintiff into his cell and onto his bunk.  They took the wheelchair, which was replaced or repaired.

Plaintiff sent a kite to health care, seeking treatment for the additional injuries.  On April 12, Defendant Mikel responded that Plaintiff had an appointment later in the week.  He submitted additional medical kites on April 13 and 14.  On April 15, Nurse Nagomy (not a defendant) sent a response saying that Plaintiff had an appointment with a medical provider.  However, Plaintiff was not seen by a medical provider while he was at DRF.  On April 17 or 18, 2018, Plaintiff was transferred to E.C. Brooks Correctional Facility (LRF).

Plaintiff alleges that Defendant Mikel and Unknown Part(y)(ies) ##1–3 failed to replace or repair his wheelchair and they denied him medical treatment from the resulting accident, violating the Eighth and Fourteenth Amendments and the ADA.

Plaintiff seeks declaratory relief and compensatory and punitive damages.

## II.      Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

11

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted).  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'"  *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under

the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–137 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

    The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998)

(declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Defendants Schafer and Cook are the first two Defendants named in the action, and their actions are the subject of Plaintiff's initial set of allegations. Plaintiff's allegations against Defendants Schafer and Cook involve harassment and retaliation at DRF that precedes and is wholly independent of Plaintiff's other allegations. Plaintiff makes no allegations against any other Defendant that are related to Schafer's and Cook's treatment of Plaintiff while was in segregation at DRF. As a result, no claim against any of the other Defendants is transactionally related to his claim against Defendants Schafer and Cook.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp.,*

*L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling.  The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted.  *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1999) . . . .  This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available."  For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)).  The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary."  *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice."  *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's claims all arose in March and April 2018.  The conduct occurred over three years ago, and, even with the benefit of tolling during the administrative-exhaustion period, *Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff may not have sufficient time in his limitations period to file new complaints against Defendants Silliman, Smith and Beck and against Mikel, Steffke, and Unknown Part(y)(ies) ##1–

16

3.  Plaintiff therefore possibly will suffer gratuitous harm if the improperly joined Defendants are dismissed.

The Court therefore will exercise its discretion under Rule 21 and sever Plaintiff's claims against Defendants Silliman, Smith, and Beck into a new action addressing Plaintiff's claims under the Eighth and Fourteenth Amendments and the ADA related to Defendants' actions to forcibly place Plaintiff on a bus not designed for persons who required a wheelchair.  The Court also will sever into a new action Plaintiff's claims under the Eighth and Fourteenth Amendments and the ADA against health-care Defendants Mikel, Steffke, and Unknown Part(y)(ies) ##1–3 related to the failure to repair or replace his wheelchair and failure to treat his injuries after both accidents.[2]

To ensure that each new case goes forward with only the claims related to the proper Defendants, the Court will direct the Clerk to send to Plaintiff two copies of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody, together with a copy of the docket sheet in each of the new actions.  The Court also will direct Plaintiff to file an amended complaint in each new action, one of which contains only the allegations relevant to Plaintiff's claims for relief against Defendants Silliman, Smith, and Beck, and the other of which contains only the allegations relevant to Plaintiff's claims for relief against Defendants Mikel, Steffke, and Unknown Part(y)(ies) ##1–3.  If Plaintiff wishes to proceed with the newly severed actions, he must carefully fill out the form complaints and submit them to the Court.

---

[2] Although Plaintiff alleges that Defendants Mikel and Steffke failed to treat his injuries following two discrete accidents, Plaintiff's makes allegations that Unknown Part(y)(ies) ##1–3 failed to treat him after both incidents, despite his kites.  In addition, Plaintiff alleges that Defendant Mikel participated in extracting him from the van in the first incident without providing any medical care, despite being aware of Plaintiff's complaints of injury.  The Court concludes that the allegations are sufficiently transactionally related to be brought in a single action.

### III.      Failure to State a Claim

The Court considers Plaintiff's remaining claims against Defendants Schafer and Cook under the dismissal standard of the PLRA.  A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

18

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff alleges that Defendants Schafer and Cook made multiple harassing and sexually harassing comments to him and threatened to send him to Level-IV housing.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (discussing inmate

abuse) (citing *Farmer*, 511 U.S. at 848–49); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). Nevertheless, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not ordinarily rise to constitutional dimensions. *See, e.g., Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76

F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."). Other courts have agreed. *See, e.g., Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that severe, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched and intimidating her into complying. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amounted to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Defendants Schafer and Cook allegedly made at least two unquestionably suggestive remarks to Plaintiff. In the first instance, Defendant Schafer stated, "Let me stick my dick (penis) in your mouth so you can see how this white cock taste!!!" (Compl., ECF No. 1, PageID.5.) Later, Defendants Schafer and Cook allegedly shouted out comments like, "Have you had a white cock in your mouth[?]" (*Id.*, PageID.6). The remainder of the comments to which Plaintiff objected were simple name-calling—calling Plaintiff a "cock sucker"—which amounts to mere verbal harassment. (*Id.*, PageID.6.) Moreover, unlike in *Rafferty*, the alleged demands for sexual conduct were yelled out to Plaintiff, rather than expressed in a more personal setting. In these circumstances, Defendants' comments, while offensive, did not evidence the sort of coercive sexual demand at issue in

21

*Rafferty*.  As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim.  *Rafferty*, 915 F.3d at 1095.

### B.  Retaliation

Plaintiff alleges that, after he filed a PREA grievance against Defendant Schafer for making the first sexual comment, Defendants Schafer and Cook substantially increased their harassment, repeatedly threatening Plaintiff with misconduct charges and being sent to Level-IV housing.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In initial review, the Court concludes that Plaintiff's allegations are sufficient to state a retaliation claim.

### C.  Fourteenth Amendment

Plaintiff claims that Defendants' conduct violated the Fourteenth Amendment, though he fails to identify the basis for his claim.  Arguably, he intends to raise a substantive due process claim.[3]

---

[3] Alternatively, Plaintiff may refer to the Fourteenth Amendment solely for its incorporation of the relevant protections under the First Amendment, *see Edwards v. South Carolina*, 372 U.S. 229, 237–38 (1963), and Eighth Amendment,

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV.  "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'"  *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'"  *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952))).  The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power."  *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these

---

*see Robinson v. California*, 370 U.S. 660, 667 (1962), as applied to the States.  In that event, no further discussion of the Fourteenth Amendment claim is required.

claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

        In this case, there are specific constitutional amendments that apply to Plaintiff's claims.  For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning the alleged harassment claims.  *See Graham, 490 U.S. at 394 (*citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims)); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal).  Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims.  *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").  Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied.  Consequently, Plaintiff's substantive due process claim will be dismissed.

## **Conclusion**

Having conducted review under Rule 21 of the Federal Rules of Civil Procedure, the Court will sever Plaintiff's claims against Defendants Silliman, Smith, and Beck into a new action and Plaintiff's claims against Defendants Mikel, Steffke, and Unknown Part(y)(ies) ##1–3 into a second new action.  Having conducted the review required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court will dismiss for failure to state a claim Plaintiff's Eighth and Fourteenth Amendment claims against remaining Defendants Schafer and Cook.  Plaintiff's retaliation claims against Defendants Schafer and Cook remain in the case.

An order consistent with this opinion will be entered.


Dated:  <u>   August 6, 2021   </u>             <u> /s/ Robert J. Jonker                          </u>
                                                             ROBERT J. JONKER
                                                             CHIEF UNITED STATES DISTRICT JUDGE